Parker, C. J.
This is a petition for a review of an action which was tried at the April term of this Court, in the county of Hampshire, in the year 1814. On said trial, a verdict was returned for the defendants in the action, according to the directions of the judge who sat in the trial, upon matter of law arising in the case. The judge having reserved the question of law for the consideration of the whole Court, the same was argued at the then next term of *the Court, being in September, 1814, and, after argument, the cause was continued nisi for advisement. At April term, 1815, judgment was entered according to the verdict returned as aforesaid.
*443 On the publication of the twelfth volume of the Massachusetts Reports, the case was seen to be reported ; but the decision of the Court, as in said report is stated, appears to be, that the verdict was set aside, and a new trial granted ; and the opinion and reasoning of the Court, which led to such a result, are given at length by the Chief Justice. Upon seeing this report, the counsel for the plaintiffs apprehended that there was a mistake made by the clerk, or by some other person, in entering up judgment upon the docket, contrary to the decision of the Court made in the action ; and they very properly preferred this petition, that the right judgment might, upon a review of the case, be entered.
As some time had elapsed between the time when the Court de termined this action and the appearance of the case in print, we were at a loss to account for the discrepancy between the record and the reported case, especially as the latter was accompanied by a detailed opinion, which, on a cursory reading, appeared to be satisfactory, and the former was unaccompanied by any reasons in support of the decision. We are, however, now satisfied, that the judgment was not entered by mistake, but by order of the Court, after a full discussion of the legal questions presented by the case, and after a sufficient examination of the authorities cited, and consideration of the arguments offered, by the counsel in the case. And, upon a revision of the question, which the present application enabled us to make, having critically examined the reasoning which precedes the apparent decision of the Court, as it appears in the printed report, we are confirmed in the opinion1 which led to the judgment as it ap pears of record.
The point upon which the decision rests is, that it appears, by the facts reported by the judge at the trial, that * the note was not at the Hartford bank, or in the possession of any of the officers thereof, or presented there by any person, on the day it became payable ; so that, in fact, it was not demanded of the promissor, according to the terms of his promise. Nor did those circumstances exist, which, according to the decision of the case of The Berkshire Bank vs. Jones, (2) would render a demand unnecessary. In that case, it was decided, that, in order to charge the indorser of a note made payable at the bank, it was not necessary to make a personal demand on the maker ; but that, u if the holder of the note is at the bank on the prescribed day, ready to receive the money if the maker be there, it is enough for him.1’ And it is further said by the Court in that case, “ If, on the trial, the plaintiffs can show, that, on the day of payment, the note was in the bank, and that the servants or officers of the bank were *444 there during the usual bank hours, to receive payment and give up the note, they will be entitled to recover; as, by the terms of the note, they were not holden to demand payment but at the bank, which was impracticable through the default of the maker.” If the doctrine thus laid down contains the limitation which is by law to be applied to the principle, that a demand in fact or in form need not be made upon a note which is payable on a day certain, .and at a particular place, then the case before us was decided right, according to the record ; for the plaintiffs were not ready at the bank on the day to receive payment and deliver up the note. Nor was the note there ; but, on the contrary, was at Northampton, in the hands of the plaintiffs’ agent, to whom it had been sent, in order that a personal demand might be made upon the maker, and notice after-wards given to the indorsers.
And we are satisfied, that the doctrine laid down in the case cited is sound law. The general rule is, that a demand must be made on the maker of the note on the day it falls due. The exception is, that, when the note is payable at a particular place, such demand need not be *made, if the holder, or any one for him, is at the place, with the note, so that he may receive the money and give up the note. This exception is to be strictly complied with, in order to charge the indorser without a demand upon the maker ; and the reason is sufficient. For it may be that tbe maker, or the indorser, has provided funds at the place prescribed ; and, if they have not, the duty of the holder is nevertheless as strong to be at the place with his note, to receive the money, as it is to make a demand upon the maker, when he is notoriously insolvent, before he can charge the indorser ; and this latter duty is indispensable, as has been decided in many cases apparently more hard than the case before us. But, as has been often observed, it is of importance that the rules which affect contracts of this nature should be clear, and invariably enforced ; and then none will suffer from their operation but the careless and the negligent.
The whole current of English authorities seems to establish the doctrine which is recognized in the case of The Berkshire Bank vs. Jones. The rule is probably well understood ; and to determine now that the plaintiffs might recover, although they were not at the place appointed for payment, and although the note was forty or fifty miles off, would be to introduce a new rule, which would tend to perplex and embarrass the parties to contracts, which should be made as simple as possible in their legal operation, [†
It remains now to account for the appearance in print of this case, *445 in which a result directly contrary to the decision of the Court appears to be given, and supported with a formal opinion by me, as the organ of the Court in that cause. As I must have been present, and assenting to the decision which was actually made, it seems unaccountable that I should have drawn up an opinion, and handed it to the reporter, so contrary to the record, and to the real decision of the Court.
*It happened, however, in this way. Before any consultation with my brethren, I had separately made up my opinion as it appears in the printed volume, and had committed it to writing for the purpose of submitting it to the other judges, when we should meet to consult upon this and other causes which had been continued for advisement. After due deliberation, my opinion did not prevail, and I saw cause myself to abandon it. The decision being settled at Boston, and the judgment being to be entered at Northampton, at the next ensuing term holden by one judge, no opinion in writing was pronounced or prepared. Some months after-wards, the reporter having called on me for the papers in such cases as were necessary to be published in the volume then in the press, the papers in this case, with my first opinion upon it, was, with other cases, accidentally handed to him ; and, as he had no means of ascertaining for which party the Court bad ordered judgment to be rendered, the case was published in course with the others.
The petitioners take nothing by their petition.

 6 Mass. Rep. 524

 As to time and place of presenting bills or notes for payment, see Chitty on Bills, (Am. Ed.) 385 et seq. and notes, 172-175, 396, 397.— Story on Bills, § 351, note 4. - Ed.]