## MEAD v. SMALL.

If the indorser of a note has protected himself from eventual loss by taking
collateral *security* of the maker, it is a waiver of his legal right to require
proof of demand on the maker, and notice to himself.

Nothing but *payment* of a note will destroy its negotiability. Nor will *this*
when made by the *last indorser*, or when made by any *prior* indorser, if
the *subsequent* indorsements are struck out before it is again put into circu-
lation.

*Assumpsit* on a promissory note made by *Jacob Allen*, paya-
ble to the defendant, and by him indorsed in blank. It came
before this Court upon exceptions filed to the opinion of the
Court of Common Pleas, where, upon the evidence adduced,
the plaintiff was nonsuited.

It appeared from the exceptions that the plaintiff called *Eb-
enezer Cobb*, who testified that he, the witness, received the note
from the defendant, who indorsed his name on it in blank, in
payment of a debt due from the defendant to him ;—that it
was at the same time agreed between them, the note being not
then payable, that he should hold the note and receive pay-
ment in labour ;—that *Allen* should not be sued, he having no
personal property liable to attachment ; but if he could not
pay the note, it should be returned to *Small*, who held a mort-
gage of *Allen's* real estate as collateral and sufficient security
for the amount ;—that on the day when the note came to ma-

turity, or the day following, the witness went to a place where he understood the maker to be at work, to demand payment, but could not find him; but that about ten days afterwards he demanded payment of the maker, and notified the indorser forthwith of his refusal to pay;—that sometime after the dis-honour of the note, the witness transferred it to the plaintiff, who filled up the indorsement as a transfer directly to herself, and thereupon brought this action to recover the amount.

*Hopkins* and *Perley*, for the plaintiff, made the following points.

1. Here was as much diligence used, as was necessary, un-der the particular circumstances of this case. No damage could happen to the defendant, he being fully secured by mort-gage; and the injunction to receive labour in payment, shews that the payment was not to be expected till some indefinite period after maturity of the note. *Freeman v. Boynton*, 7 *Mass.* 483. *Bull. N. P.* 273. *May v. Coffin*, 4 *Mass.* 431. *Put-nam v. Sullivan*, 4 *Mass.* 45. *Chitty on bills*, 87; 130, 131. *Bond v. Farnham*, 5 *Mass.* 170. *Crossen, v. Hutchinson*, 9 *Mass.* 205.

2. The right of the defendant to *notice* was waived. No notice to the indorser is necessary, unless he hazards the loss of his debt. But here no risk was incurred; and where the reason for notice fails, the right to it may be presumed to be waived. *Copp v. M'Dugal* 9 *Mass.* 1. *Lincoln and Kennebec bank v. Page*, 9 *Mass.* 155. *Chitty on bills*, 171, 172, 198, 162, *note.*

3. And this waiver enures to the benefit of the plaintiff. Where a negotiable paper is put into circulation, the rights of preceding parties pass into the hands of subsequent indorsees; —and any agreement to waive rights, is an agreement with ev-ery subsequent holder of the bill or note. Whatever has been done or omitted here, was done or omitted at the defendant's request; and it is unjust to permit him to take advantage of it. *Chitty*, 306. 13 *East.* 417. 1 *Campb.* 383. 1 *Taunt.* 224. 3 *D. & E.* 83, *note.*

*Frost*, for the defendant.

Here has been no diligence used in demanding payment of the note and giving notice to the indorser ;—and upon the plainest principles governing mercantile transactions, he is therefore discharged. *Chitty on bills*, 212—214. *Hussey v. Freeman*, 10 *Mass.* 84. 13 *Mass.* 556.

Nor has he waived this right. The agreement with the person to whom he transferred the note, rested wholly on the expected diligence to be used in collecting it of *Allen*. If that could not be done, the note was to be *returned to Small*. But these terms were never complied with.

But if there had been such agreement to waive the right to notice, it is not transferable, being out of the course of mercantile business, and not within the principles of the law relating to negotiable paper.

This argument was had at the last *November* term, and the cause having been continued for advisement, the opinion of the Court was now delivered by

MELLEN C. J. It is admitted that all the parties to the note in question reside within ten or twelve miles of each other, and therefore, according to numerous decisions, the demands made upon *Allen*, and the notice given to the defendant, were both ineffectual. No demand was made till ten days after the maturity of the note, and then, and not till then, was notice given to *Small*. If the demand had been made in season, still the notice to the defendant was very clearly too late. If there were no other facts in the case, the action certainly could not be maintained. We must then examine and see if there are any other facts which entitle the plaintiff to recover, without having made any demand on the maker, or given any notice to the indorser. It is contended by the plaintiff's counsel that the defendant by his own acts has waived his right to object to the want of such demand and notice. By examining the exceptions it appears that *Allen* was destitute of all personal property liable to attachment; that *Small* received and held a mortgage of *Allen's* real property, sufficient to secure the payment of said note ; and which was made for that express purpose. These facts present a stronger case in favour of the

plaintiff, than those in the case of *Bond v. Farnham* which was cited by the plaintiff's counsel. There the property pledged was not a *sufficient* indemnity to the indorser, but it was all which the maker had. Here it is proved to be sufficient. The mere insolvency of the maker is no reason why the indorser should not be entitled to the usual proof of demand and notice.— *Woodbridge v. Brigham & al.* 13 *Mass.* 556. and *Hussey v. Freeman*, 10 *Mass.* 84. But if the indorser has protected himself from eventual loss by his own act in taking security from the maker, such conduct must be considered as a waiver of the legal right to require proof of demand and notice. And we are of opinion accordingly that the facts before us clearly shew such a waiver in the present case. It was also intimated, and briefly urged by the counsel for the defendant, that as the note in question was not transferred by delivery to the plaintiff until some time after the day of payment, and after it was dishonoured, the right of action which *Cobb* had to recover the amount due upon it from the defendant was a personal right, and not transferable to any one, and of course that the plaintiff cannot maintain this action as *indorsee,* even though the facts would enable *Cobb* to recover, in his own name ; and we understand that the decision in the Court of Common Pleas rested on this ground. If such be the law, the nonsuit was proper, and must be confirmed.

Assignments of bills of exchange are usually made after acceptance, and before the day of payment. *Chitty on bills,* 112. But " the transfer of a bill or note may be made at any time after it has issued, even *after the day of payment.*" *Kyd,* 89. See also *Chitty on bills,* 113. 1 *Lord Raym.* 575. 3 *D. & E.* 80. 1 *H. Bl.* 88, 89. When a bill of exchange is drawn, and the drawee refuses to accept it, the common course is for the payee to return it to the drawer, or resort to him by action ; and not to indorse it or dispose of it. But this usage does not apply to promissory notes, because " the making a promissory note is equivalent to an acceptance of a bill of exchange." *Kyd,* 68. A promissory note, when indorsed, assumes the shape, and in a legal contemplation becomes an accepted bill of exchange. 1 *Burr.* 676. If then an accepted bill may be indorsed after the day of payment, and consequently after it has been dis-

Mead *v.* Small.

honoured by those who were bound to pay for it ; for the same reason a promissory note, after its maturity, and after the liability of the maker and indorser has been fixed by legal demand and notice, may be indorsed a second time. And it does not seem to be denied that such second indorsement will give to the second indorsee as good a right of action as the original indorsement gave to the first indorsee, as against the maker of the note. The question is, whether the right of action is against him only, or exists against the indorsers also.

The statute of *Anne* makes no distinction, but gives to the indorsee the same remedy by action against the maker and the indorser of a promissory note, in like manner as in cases of inland bills of exchange. No case has been cited in support of the distinction which has been relied on, shewing that the indorsee of a promissory note cannot indorse it again or transfer it by delivery to a third person, and thereby enable such third person to maintain an action against the first indorser, as well as the maker. And we are not aware of any such distinction or limitation of the principle of law touching the negotiability of bills or notes. On the contrary the case of *Crossly v. Ham*, 13 *East*, 497. seems to prove that no such distinction exists. In that case *Clark* drew a bill of exchange on *Dickerson & Co.* for £450 at sixty days sight, payable to *Ham* or his order, who indorsed it at the same time, and it was passed in payment to *Parry*, whose agents caused it to be presented for acceptance on the 26th of *April*, 1804. The next day it was protested for non-acceptance. On the 6th of *June* following the bill came into the hands of the plaintiff, who was then informed that it had been dishonoured, and that he must take it under all existing circumstances, and liable to all the infirmities that attended it. After this dishonour of the bill, the plaintiff negotiated it again to certain persons, from whom he again took it up, and on the 29th of *June* the bill was presented for payment, and was finally dishonoured. *Lord Ellenborough*, in delivering the opinion of the Court, says, " The plaintiff took this bill " after this dishonour of it by the drawees. He therefore took " it with all the existing infirmities belonging to it at the time." He then proceeds and states what those infirmities were, viz.— an agreement made by the agents of *Parry* with *Ham*, by vir-

tue of which a substantial defence to the action was furnished; and accordingly the verdict, which was returned for the plaintiff, was set aside, and judgment entered for the defendant. No question was made as to the plaintiff's right to recover in consequence of his having become the holder and owner of the bill after its dishonour. The defendant prevailed *merely* on the ground of the special agreement of *Parry*, of which the plaintiff was apprised at the time he received the bill, and by which he was therefore bound in the same manner as *Parry* would have been, had the suit been in his name. That action was against the indorser, and so is the present; and in fact the two cases are in all essential particulars precisely similar. It is no objection to say that *Cobb's* right of action was not transferable;—the statute of *Anne* has altered the common law and made such right transferable; as well the right of action against the indorser, as the maker. It is also a common principle that in declaring on a promissory note, on which are the names of several indorsers, the holder of the note may strike out all the names but the first, and allege the note to have been indorsed directly to himself. It is therefore no objection in the present case, that the note was indorsed, and delivered by the defendant to *Cobb*, and not to the plaintiff, and that she received it by delivery from him. It does not appear that any thing, except payment of a bill or note will destroy its negotiable quality. Many cases shew that payment has that effect. *Chitty on bills*, 115. and cases there cited. *Boylston v. Green*, 8 *Mass*. 465. *Blake v. Sewall*, 3 *Mass*. 556. *Baker v. Wheaton*, 5 *Mass*. 509. and *Emerson v. Cutts*, 12 *Mass*. 78. But to this principle there is a limitation; payment will not destroy such negotiability when made by the last indorser of a note or bill of exchange; or when made by a prior indorser, if the subsequent indorsements are struck out before it is again negotiable, as settled in *Callon v. Lawrence*, 3 *Maule & Selw*. 95. and *Guild v. Eager & al*. 17 *Mass*. 615. In the present case, therefore, if *Cobb* had returned the note to *Small*, and he had paid *Cobb* the amount, still *Small* might again have put it in circulation; and *Cobb* might have transferred it also in the manner he did; because, by such negotiation, no new liabilities would have been created.

We have no doubt that the plaintiff may avail herself of the waiver of the defendant's right to call for proof of demand and notice, in the same manner as *Cobb* himself could, were he plaintiff; and we are all of opinion that the nonsuit must be set aside, and the cause stand for trial.