ALEXANDER B. ENOCH, Respondent, *v.* JOHN R. BRANDON et al., Appellants.

(Argued October 18, 1928; decided November 20, 1928.)

*Charles F. Blair* for appellants. The bond, when accurately construed, contains an absolute promise to pay on a definite date. This promise is not qualified by

reference to the mortgage contained in the bond. (*Lisman v. Michigan Peninsular Car Co.*, 50 App. Div. 311; *Old Colony Trust Co. v. Stumpel*, 126 Misc. Rep. 375; 247 N. Y. 538; *King Cattle Co. v. Joseph*, 199 N. W. Rep. 437; *Bank of Manhattan Company v. Morgan*, 242 N. Y. 38.)

*Samuel Zinman, Harold Schwarzberg* and *Nathan B. Bernstein* for Saul Solomon et al., *amici curiæ*. The promise to pay contained on the face of the bonds is absolute and unconditional. The references to the mortgage serve merely to indicate the source of and the conditions attached to the rights of the bondholders in relation to the security underlying the primary obligation and to such further rights as are conferred upon the bondholders by the mortgage provisions which supplement but do not qualify the rights arising out of the absolute promise to pay. (*Hibbs v. Brown*, 112 App. Div. 214; 190 N. Y. 167; *Higgins v. Hocking Valley Railway Co.*, 188 App. Div. 684; *Old Colony Trust Co. v. Stumpel*, 247 N. Y. 538; *Batchelder v. Council Grove Water Co.*, 131 N. Y. 42; *Watson v. Chicago, R. I. & P. R. R. Co.*, 169 App. Div. 663; *McClelland v. Norfolk Southern Ry. Co.*, 110 N. Y. 469.)

*Alfred H. Martin* for respondent. The clauses referring to the mortgage *ipso facto* render the bonds non-negotiable and no examination of the terms of the mortgage is necessary. (*Old Colony Trust Co. v. Stumpel*, 247 N. Y. 22; *Hull v. Angus*, 118 Pac. Rep. 284; *King Cattle Co. v. Joseph*, 199 N. W. Rep. 437; *Bank of Manhattan Co. v. Morgan*, 242 N. Y. 38; *Verner v. White*, 108 So. Rep. 368; *Central National Bank v. Hubbel*, 154 N. E. Rep. 551; *American Exchange Bank v. Blanchard*, 89 Mass. 333; *Dilley v. Van Wie*, 6 Wis. 209; *Gushing v. Field*, 70 Me. 50; *McComas v. Haas*, 8 N. E. Rep. 579.) The bonds recite on their face that they are subject to the terms of the mortgage which latter are wholly inconsistent with the requirements of negotiability. (*McClelland v. Norfolk &*

*Southern Ry. Co.*, 110 N. Y. 469; *Union Nat. Bank* v. *Chapman*, 169 N. Y. 538; *International Text Book Co.* v. *Connelly*, 206 N. Y. 188.)

*Augustus L. Richards* and *Alanson W. Willcox* for Ulster and Delaware Railroad Company, *amicus curiæ.* The bonds incorporate by reference the provisions of the mortgage, and subject every holder to the restrictions therein contained. (*Old Colony Trust Co.* v. *Stumpel*, 247 N. Y. 538; *McClelland* v. *Norfolk Southern Railroad Co.*, 110 N. Y. 469; *Watson* v. *Chicago, R. I. & P. R. R. Co.*, 169 App. Div. 663; *Rothschild* v. *Rio Grande Western Ry. Co.*, 84 Hun, 103; 164 N. Y. 594; *McClure* v. *Township of Oxford*, 94 U. S. 429; *Crosthwaite* v. *Moline Plow Co.*, 298 Fed. Rep. 466; *Allan* v. *Moline Plow Co.*, 14 Fed. Rep. [2d] 912; *Babbitt* v. *Read*, 236 Fed. Rep. 42; *Klots Throwing Co.* v. *Manufacturers' Commercial Co.*, 179 Fed. Rep. 813; *Muren* v. *Southern Coal & Mining Co.*, 177 Mo. App. 600; *Boley* v. *Lake Street El. R. Co.*, 64 Ill. App. 305; *Kohn* v. *Sacramento Electric, Gas & Ry. Co.*, 168 Cal. 1; *Hull* v. *Angus*, 60 Ore. 95; *American Exchange Bank* v. *Blanchard*, 7 Allen [Mass.], 333.) The provisions incorporated into the bonds are such as to destroy negotiability. (*McClelland* v. *Norfolk Southern R. R. Co.*, 110 N. Y. 469; *Hibbs* v. *Brown*, 190 N. Y. 167; *Higgins* v. *Hocking Valley Ry. Co.*, 188 App. Div. 684; *Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441; *Tradesmen's Nat. Bank* v. *Curtis*, 167 N. Y. 194; *Klots Throwing Co.* v. *Manufacturers' Commercial Co.*, 179 Fed. Rep. 813; *Central National Bank* v. *Hubbel*, 258 Mass. 124.)

ANDREWS, J. The question before us is whether certain bonds are negotiable instruments. If so, the purchaser in due course from a thief may retain them.

The Manitoba Power Company issued a series of bonds. It promised to pay the bearer of each on November 1, 1941, a certain sum at a certain place, with interest.

They are said to be " all equally secured by and entitled to the benefits and subject to the provisions " of a trust mortgage. They may be redeemed at 105 per cent and interest at certain dates. The obligor must create a sinking fund to provide for their purchase or redemption and the principal may become due in advance of maturity in case of default under the mortgage; all as provided in the mortgage " to which reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner in which notice may be given to such holders, and the terms and conditions upon which said bonds are issued and secured." The bonds may be registered in the usual way and except where registered " they are to be treated as negotiable and all persons are invited by the Company to act accordingly."

At times this last provision might aid in the construction of doubtful clauses contained in the instrument before the court. It at least shows that the parties intended to omit anything that might impair negotiability. But no such statement will make negotiable a bond not in the form provided by our statute. Whether the result was or was not fortunate it is too late to argue that the Legislature did not refer to bonds in its all-inclusive definitions of negotiable paper. True, to become negotiable an instrument need not follow any precise language. (Negotiable Instruments Law [Cons. Laws, ch. 38], sec. 29.) But it " must conform " to the definition specified in section 20. In the face of a command so explicit we must adhere to the design of the Legislature (*Amer. Nat. Bank* v. *Sommerville*, 191 Cal. 364.) At times contract rights may be enforced or some theory of estoppel adopted, but no intention, no agreement, may make negotiable an instrument which the statute declares to be non-negotiable.

We turn, therefore, to the more serious question. The

statute deals with the form of the instrument — with what a mere inspection of its face should disclose. It must contain an unconditional promise to pay a fixed sum, on demand, or at a fixed or determinable future time, to order or to bearer. Only if it fulfills these requirements is it negotiable. If it does, no collateral agreement affects its character.

If in the bond or note anything appears requiring reference to another document to determine whether in fact the unconditional promise to pay a fixed sum at a future date is modified or subject to some contingency, then the promise is no longer unconditional. What that document may provide is immaterial. Reference to the paper itself said to be negotiable determines its character. (*Old Colony Trust Company* v. *Stumpel*, 247 N. Y. 538.)

Provisions other than those required by section 20 may be contained in a bond or note without impairing its negotiability. There may be included, among other things, a statement of the transaction giving rise to the instrument (sec. 22) or a statement as to collateral security. (Sec. 24.) And it may refer to a trust mortgage, or to an agreement as to the collateral which fixes the remedies of the parties with respect thereto. (*Chelsea Bank* v. *Warner*, 202 App. Div. 499.)

The rule itself is not a difficult one. The trouble, as often happens, lies in its application to particular facts. There is no infallible test as to whether there is a modification of the promise. Because of differences in the words used, or in the arrangement of paragraphs, sentences or clauses, each instrument must be interpreted by itself. Only then may we solve the question as to its character.

Three cases in this State will serve as an illustration. In *McClelland* v. *Norfolk Southern R. R. Co.* (110 N. Y. 469) the bond itself showed that the promise to pay was a conditional one. It was to become payable upon the

terms and with the effect mentioned in the trust mortgage. In *Hibbs* v. *Brown* (190 N. Y. 167) the precise form of the bond involved does not appear in the printed case and exceptions. It did, however, contain a clause referring " to the deed of trust for a statement of the rights of the bondholders and of the securities and property securing the payment of. the bonds," and we said that this clause had only to do with procedure under the trust indenture. In *Old Colony Trust Company* v. *Stumpel* (247 N. Y. 538) the note stated that it was " subject to the terms " of a conditional sales agreement. Here by no possibility did the clause relate to security. Necessarily it had to do with the terms of payment.

Do then the references in these particular bonds to the trust mortgage modify the promise to pay; do they subject it to some possible condition or contingency described elsewhere, or do they merely determine the rights and remedies of the holder under the mortgage? We must consider the instrument as a whole, not wresting any one phrase from its context and concentrating our attention upon it alone. Further, where the meaning is doubtful, we must adopt the construction most favorable to the bondholder.

The bonds are part of an issue of $7,500,000, " all equally secured by and entitled to the benefits and subject to the provisions " of the trust mortgage. Then, speaking of possible redemption, of acceleration of payment, of a sinking fund and of notice, it continues " all as provided " in the trust mortgage " to which reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner in which notice may be given to such holders, and the terms and conditions under which said bonds are issued and secured."

We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions

all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights. They are so linked together as to indicate that the obligor was speaking solely of the security. A purchaser scanning the bonds would have the same thought. It would never occur to him that when November 1, 1941, arrived, because of something contained in the mortgage he might be unable to collect the amount due him. He would interpret the statement that the bonds were secured by and entitled to the benefits and subject to the provisions of the mortgage, as meaning that a foreclosure or other relief might be had thereunder only subject to its provisions. He would see that reference to it is also made to determine the terms and conditions under which the bonds are issued and secured. Again it would mean to him as it means to us, that only by turning to the mortgage might he discover the precise nature of the lien he is to obtain. He would see that the bonds were to be issued not only upon the general credit of the corporation, but upon the faith of some collateral mortgage. To it he must go if further knowledge as to this security is desired.

Some minor matters are also to be considered. There is the possibility of the acceleration of the date when the bonds are due if there is default under the mortgage. Such a possibility does not make them non-negotiable. (*Higgins* v. *Hocking Valley Ry. Co.*, 188 App. Div. 684; *Chicago Railway Equipment Company* v. *Merchants' Bank*, 136 U. S. 268, 284; *Mackintosh* v. *Gibbs*, 81 N. J. L. 577; *Schmidt* v. *Pegg*, 172 Mich. 159; *White* v. *Hatcher*, 135 Tenn. 609.) A note is payable at a determinable future time if payable on or before a fixed date. (Sec. 23.) And in one case acceleration of payment in case of default is expressly recognized. (Sec. 21.) The same thing is true of the privilege given the obligor to redeem at 105 per cent before the bonds became due. That does not limit its absolute promise to pay on November 1, 1941. The

bonds are payable to bearer or if registered to the registered holder. This does not affect their negotiability. (*Dickerman* v. *Northern Trust Company*, 176 U. S. 181.) Nor does the provision requiring the obligor to create a sinking fund.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; POUND, J., dissents.

Judgment accordingly.