### LIDGERWOOD v. HALE & KILBURN CORPORATION.

District Court, S. D. New York.

Dec. 6, 1930.

Thomas J. Blake, of New York City, for plaintiff.

Davisson & Manice, of New York City (Allen McCarty, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The plaintiff moves for judgment on the pleadings. The case presents the interesting question whether the holder of a promissory note may maintain a suit against the maker after maturity and nonpayment, where the note recites that it is subject to the terms of an indenture and where the indenture provides that no noteholder shall bring suit to enforce the note unless the trustee under the indenture shall fail to bring suit after being requested to do so by the holders of a specified percentage of the outstanding notes, this condition not having been fulfilled. The facts are as follows:

In 1918 the defendant issued its notes to the total amount of $1,000,000, the notes being payable to the registered holders. The notes were to mature serially, $100,000 each year from 1922 to 1931, inclusive. The plaintiff owns and is the registered holder of one of these notes in the principal sum of $5,300, which matured on July 1, 1930, was presented for payment, and was not paid. Each of the serial notes contained the following clause:

"This note * * * is entitled to all the benefits and subject to all the provisions of an agreement dated February 21, 1918, between the Company and Bankers Trust Company, as Trustee, to which agreement reference is hereby made for a description of the rights of the holders and owners of notes under the same and the terms and conditions upon which said notes are issued, received and held, to all the provisions whereof the registered owner or holder, by acceptance hereof, assents."

The agreement of February 21, 1918, did not relate to any collateral security or mortgage to secure the notes. Apparently the notes were merely the general and unsecured obligations of the defendant. What the agreement did cover was the issuance of the notes, registration, redemption, acceleration of maturity upon default, subordination of the notes to bank loans, and the like. It also provided, in article 5, that upon default in the payment of interest or principal on any note, the defendant on demand would pay to the trustee the entire amount due on all notes then outstanding, for the benefit of the noteholders, and that on its failure to pay such sum, the trustee should be entitled to sue the defendant for the entire amount. Then comes this provision:

"Section 5. No holder or registered owner of any Note shall have any right to institute any suit, action or proceeding whatsoever for the enforcement of any of the covenants or agreements herein or in the Notes contained, or for the enforcement of any right or remedy now or at any time hereafter given at law or in equity or by statute, unless and until the registered owners of at least ten per centum in principal amount of the Notes then outstanding shall have given the Trustee previous written notice of default and of the continuance thereof as hereinbefore provided and unless and until the registered owners of at least twenty-five per centum in principal amount of the Notes then outstanding shall have made written request upon the Trustee and have afforded to it a reasonable opportunity to institute such action, suit or proceedings in its own name, and shall have offered to the Trustee security and indemnity satisfactory to it against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee, for thirty days after the receipt by it of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceedings; and such notification, request and offer of indemnity are hereby declared, in every such case, at the option of the Trustee, to be conditions precedent to the execution by the Trustee of the powers and trusts of this agreement."

This action is at law and is based upon the breach by the defendant of its primary promise to pay the sum of $5,300 on July 1, 1930, according to the tenor of the note. The plaintiff has not pleaded performance or satisfaction of the conditions precedent set forth in the extract of the agreement just quoted. The defense is the nonfulfillment of these conditions.

█ In my opinion, this suit must fail, both on principle and on authority. The note contained the defendant's undertaking to pay a set sum on a set day, but it also said that it was "subject to all the provisions of" the agreement between the defendant and the trustee. The reference to the agreement was clear, emphatic, and comprehensive—"to which agreement reference is hereby made for

a description of the rights of the holders and owners of notes under the same and the terms and conditions upon which said notes are issued, received and held." And then, to bind the holder beyond peradventure, the note reads, "to all.the provisions whereof the registered owner or holder, by acceptance hereof, assents." I cannot conceive of words in the English language which would more plainly warn the holder that, regardless of the general undertakings of the maker contained in the note, the holder's rights were qualified and cut down by what appeared in the indenture. This is not a case where the reference to an indenture was such as to lead the holder to believe that the indenture simply added more rights to what he had on the face of the note, without in any way hinting that there might be something in the indenture to his detriment, as in Enoch v. Brandon, 249 N. Y. 263, 164 N. E. 45. There the bond referred to the indenture merely for matters relating to the security. But here the provisions in the agreement were incorporated by reference into the note for all purposes as thoroughly as if they had been set forth in the note in hæc verba.

We come then to the provisions of the agreement. One of them is that no noteholder shall sue "for the enforcement of any of the covenants or agreements herein or in the Notes contained," unless and until certain things have come to pass. This clause applies to the defendant's covenant or agreement in the notes to pay the principal sum on maturity, or else ordinary language has lost its meaning. At this point we pass by cases like General Investment Co. v. Interborough Rapid Transit Co., 200 App. Div. 794, 193 N. Y. S. 903, affirmed in 235 N. Y. 133, 139 N. E. 216, and Kimber v. Gunnell Gold Mining Co. (C. C. A.) 126 F. 137, where the clause in the indenture merely placed obstacles in the path of any noteholder seeking to institute suit for the enforcement of the indenture. In cases of that type there is nothing in the indenture which even purports to modify the promise to pay or the implied right of suit given in the bond or note. In the present case, however, the clause in the agreement expressly covers the noteholder's right to sue on the note itself. Until the time arrives when courts are to remake for parties the contracts which they have made, it seems to me that nothing can be done for plaintiffs in a situation like this.

■ It is said that there is an inconsistency between the note and the agreement, and that in such case the note should prevail. But there is no inconsistency. By virtue of the agreement, there are conditions attached to the right to sue upon default, a right which ordinarily is absolute. This is qualification, not repugnancy. In the construction of instruments, especially of conveyances and wills, there is a rule that a general clause giving a broad right will not be cut down or modified by a subsequent provision which is equivocal or ambiguous. Here, however, the subsequent clause is free from equivocation and ambiguity. The intent of the maker of the notes that it should not be subject to suits by individual noteholders, except on the conditions specified in the agreement, is unmistakable. The attention of all persons proposing to take or buy the notes was directed to this feature of the bargain by an appropriate reference in the notes, and by taking the notes they assented to it.

■ It is said that this result is harsh upon the individual noteholder, whose independence of action is thus taken away. The hardship might be granted, without advancing the plaintiff's case. Certainly a court of law cannot relieve against a harsh bargain. But it strikes me that the hardship is more theoretical than real. The trustee may always sue in behalf of the noteholders as a group. The trustee, after all, is fiduciary for the noteholders. If we assume a situation where ordinary good faith on the part of the trustee called for action to be taken in behalf of the entire body of noteholders, but it stubbornly refused to bestir itself, any noteholder would obviously have his remedy by bill in equity against the trustee and this defendant. A suit by a cestui que trust against his trustee and an obligor where the trustee in bad faith or abuse of discretion declines to enforce an obligation held in trust is not a novelty; many stockholder's bills serve as precedents. In such a case the exemptions given to the trustee in the agreement are of no great weight, for the law always reads good faith into such instruments. Industrial & General Trust, Ltd., v. Tod, 180 N. Y. 215, 225, 73 N. E. 7. Finally, it seems to me that the restriction in this case is not one devised out of pure spite to embarrass the holders; it has a reasonable and perhaps a meritorious purpose. The notes were serial notes, a block of $100,000 falling due each year. There was no collateral security. It was therefore deemed proper to afford some protection to the holders of the later maturities, whose notes had not been defaulted, against a preference sought to be obtained by a holder whose note had matured and gone to protest.

The restriction in question is merely part of an article giving the trustee the right to sue for all noteholders in the event of default on any one note. As a part of this plan, there is something to be said in its favor. There are situations somewhat similar where a like result is brought about by statute, which should make it clear that there is nothing in this plan which is opposed to public policy. A composition in bankruptcy may be achieved by the wishes of a specified percentage of creditors, and a dissenting creditor who insists upon his ordinary legal rights must yield. So too as to subordinating mechanics' liens, in New York at least, upon consent of only 55 per cent. of the creditors (Lien Law [Consol. Laws, c. 33] §§ 26, 27). Although the dissenter's rights are his alone, he is bound by the rule of the majority. If it be thought nevertheless that restrictions like these should not be countenanced, that each noteholder in a case like the present should be allowed to sue on his obligation by consulting his own judgment alone, the remedy will come when buyers of corporate obligations prove to be more discriminating and when the presence of conditions of this sort will render the obligation unsaleable or unattractive in the market.

As for the authorities, there are two cases in which the facts are indistinguishable from the facts here and which support the conclusion already indicated. Crosthwaite v. Moline Plow Co., 298 F. 466, a decision in this district; Allan v. Moline Plow Co., 14 F. (2d) 912, a decision by the Circuit Court of Appeals of the Eighth Circuit. There are dicta to the contrary in several cases in the lower courts of New York, and there seems to be at least one case recently decided at nisi prius, Berman v. Consolidated Nevada-Utah Corporation, 132 Misc. Rep. 462, 230 N. Y. S. 421, which is squarely opposed. That the Berman Case is not representative of the views of the Court of Appeals of New York seems sufficiently indicated by Old Colony Trust Co. v. Stumpel, 247 N. Y. 538, 161 N. E. 173, and by the distinctions observed in Enoch v. Brandon, supra.

A point of procedure remains. It is clear that the plaintiff's motion for judgment on the pleadings should be denied. On such a motion if either party is entitled to judgment on the pleadings, the court may give judgment accordingly, without regard to which party makes the motion. New York Rules of Civil Practice, rule 112. In determining whether the defendant is entitled to judgment dismissing the complaint, I have

in mind the fact that the 1918 agreement is not pleaded in the complaint, but is new matter set up in the answer as a separate defense and is therefore deemed controverted by the plaintiff. New York Civil Practice Act, § 243. Strictly, therefore, the 1918 agreement is not admitted by the plaintiff for purposes of this motion. The plaintiff's brief, however, substantially admits that the copy of the agreement annexed to the answer is a correct copy of the agreement referred to in the note, and there can be no doubt that this is the fact; and the court may give judgment at any stage of an action upon the pleadings or admissions of a party. New York Civil Practice Act, § 476. Moreover, the complaint itself seems defective. The plaintiff has pleaded a copy of the note, which refers to the agreement for a statement of "the terms and conditions upon which said notes are issued, received and held"; but the complaint does not plead that the conditions have been performed. New York Rules of Civil Practice, rule 92. There will therefore be judgment dismissing the complaint.