CANDEE, SMITH & HOWLAND Co., Plaintiff, *v.* BENDISH CONTRACTING Co., INC., and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Ninth District, June 30, 1933.

*Morris J. Goldston,* for the plaintiff.

*Charles T. Rudershausen,* for the defendants.

LEWIS, DAVID C., J. The Bendish Contracting Co., Inc., as maker, executed a series of promissory notes dated the 25th day of April, 1932, payable to the order of the General Flooring and Stucco Corporation, maturing on different dates and indorsed before delivery by Philip J. Bendish as an accommodation indorser.

Each note contained the following legend: " This note is No. ( ) of a series of nine notes, that upon default in the payment of any one of the notes the remaining notes shall immediately become due and payable without notice."

Upon receipt of the said series of notes by the payee, it negotiated the individual notes to different parties, including the plaintiff.

The first note has been paid.

The second note matured on the 27th of June, 1932. It was duly presented for payment. Payment was demanded and refused, whereupon the note was protested; and due notice of dishonor was given to the defendant Philip J. Bendish.

The plaintiff was on June 27, 1932, the holder in due course of the second note; but at that time the plaintiff was not the owner or in possession of the other notes.

However, the subsequently maturing notes were presented upon their respective original due dates, and upon non-payment, notices of dishonor were then sent to the accommodation indorser, Philip J. Bendish.

After the maturity of all of the remaining notes, they were

assigned to this plaintiff, who in this action now seeks to recover upon each of them.

The individual defendant contests his liability on all the notes, except the second one, on the ground that the said notes were never properly duly presented for payment, and that proper notices of dishonor were never duly given to this individual defendant.

The initial inquiry runs to the negotiability of the paper.

This query is readily and conclusively answered.

The addition of the acceleration clause in no wise impaired the negotiability of the instruments. (*Enoch* v. *Brandon*, 249 N. Y. 263, at p. 269; *First Nat. Bank* v. *Blackman*, Id. 322, at p. 330; Neg. Inst. Law, §§ 21, 23.)

Coming within the dominion of the Negotiable Instruments Law, the paper is subject to its control, and liability is to be measured by its provisions.

Under the Negotiable Instruments Law, the liability of an accommodation indorser is secondary, following presentment, default and notice of dishonor. This is the prescribed procedure. Unless there is waiver, there must be conformity.

Deferring for the moment the question of accelerated maturity, one inquires whether the plaintiff established a sufficient presentment of all the notes upon the June twenty-seventh default (that is, upon the default in the payment of the second note).

The original payee, eager to preserve the liability of the accommodation indorser on all the notes, undertook upon the June twenty-seventh default to remind the accommodation indorser of the acceleration clause and of the rights of the holders of the respective notes, in view of such default, to demand and enforce immediate payment. But at that time the right to demand payment of the other notes was no longer resident in such payee. By its prior negotiation of those notes it had alienated this right.

Furthermore, the statute looks to the production of the note upon its presentment. How could a payee, who did not possess these remaining notes, present them?

Nor do I think a waiver of presentment and notice of dishonor have been established. The respective holders of the different notes did not transfer them to this plaintiff until after their original dates of maturity. Before the plaintiff secured such notes, its acts could not affect the rights of the holders. And if the original payee, no longer possessed of the notes, had no power to do these things, on what theory can the court spell a waiver out of its unauthorized dealings?

For this court to now subscribe to any contrary holding might dislocate financial transactions and invite an unwelcome element of

uncertainty into a field of law and business sought to be kept free from such impediments.

Ample authorities support these conclusions.

" Presentment of a note and demand of payment must be made by actual exhibition of the instrument itself, or at least the demand should be accompanied by some clear indication that the instrument is at hand, ready to be delivered, and such must really be the case. (Daniel on Negotiable Instruments, § 654.) While it may not be necessary to actually produce the note if the maker refuses to pay it, it must be there at the place for presentment, otherwise the presentment is insufficient. (Story on Promissory Notes, § 243; *Freeman* v. *Boynton,* 7 Mass. 483; *Woodbridge* v. *Brigham,* 13 Mass. 556.) * * *

" 'A demand of payment, at the place named, is an essential part of the contract so far as the indorser is concerned, and no right of action accrues to the holder until " after demand has been made in strict compliance with the terms of the contract and due notice given of the default " * * *. *It is essential to the validity of a demand, that it shall be made by a person authorized to receive payment, and deliver the instrument upon which it is founded,* and the person upon whom it is made, must then be afforded an opportunity, by immediate payment or performance, to protect himself from the consequences of a breach of contract.' * * *

" But the argument ignores the fact that a valid presentment, as hitherto pointed out, consists of something more than mere demand. It requires personal attendance at the place of demand *with the note, in readiness to exhibit it* if required and to receive payment and surrender it if the debtor is willing to pay. The counsel cites several cases in which it is said that the possession of the instrument by the person making the demand is sufficient although it is not actually exhibited. These statements were entirely accurate when made before the general use of the telephone. When demand is made by ordinary human vocal power, unaided by mechanical device, it is plain that the person making the demand is necessarily present at the place at which the demand is made, and if the *instrument is in his possession the presence of the instrument is equally clear.* The statement if now inaccurate is so by the use of the telephone. If the theory on which the decisions of the courts below have proceeded is to prevail it is difficult to see why a valid presentment of a note payable in Buffalo might not be made over the telephone from New York, or if that is to be deemed too great a distance, where shall the line between a sufficient and insufficient demand and presentment be drawn? Will a demand for payment of an instrument payable in Buffalo be good if made

at Batavia and bad if made at Rochester? " (*Gilpin* v. *Savage*, 201 N. Y. 167, at pp. 170, 171, 172.)

" It is very clear that no cause of action arises against the indorser, upon such a contract, until after a demand made at the time and place stipulated, and the neglect of the maker to pay the same. The undertaking of the indorser is conditional, and an omission by the holder to comply with the condition imposed, by the contract, under which the indorser's obligation arises, operates to discharge him altogether from liability. (Story Prom. Notes, § 230; *United States Bank* v. *Smith*, 11 Wheat. 171.)

"A demand of payment, at the place named, is an essential part of the contract so far as the indorser is concerned, and no right of action accrues to the holder until ' after the demand has been made in strict compliance with the terms of the contract and due notice given of the default.' (*Wolcott* v. *Van Santvoord*, 17 Johns. 248; *Woodworth* v. *Bank of America*, 19 id. 392; *Ferner* v. *Williams*, 37 Barb. 10.) " (*Parker* v. *Stroud*, 98 N. Y. 379, at p. 384.)

" The maker of the note may have promised to pay it at some particular time and failed to keep his promise; yet, unless the demand was actually made, *the note would not be dishonored so as to set the Statute of Limitations running in favor of the indorser.* (*Parker* v. *Stroud*, 98 N. Y. 379.) The rule should work the same in both directions. If the statement of the appellant would be insufficient to support the indorser's defense of the Statute of Limitations, we think it equally insufficient to charge her with notice that the note was dishonored." (*Porter* v. *Thom*, 40 App. Div. 34, 36.)

" It is only when, because of some act of the indorser, the non-payment by the maker and a failure of notice to the indorser cannot possibly operate to the injury of the latter that the omission is excused. The mere fact of insolvency of the maker is not enough. * * * The fact which would excuse this presentation must, as I understand it, be some act in which the indorser participated, by reason of which the knowledge of the fact that the maker would not pay the bill could be of no benefit to him." (*O'Bannon Co.* v. *Curran*, 129 App. Div. 90, at p. 93.)

" This assent must be clearly established and will not be inferred from doubtful or equivocal acts or language. It has been frequently held that a promise by the indorser to pay the note or bill, after he has been discharged by the failure to protest it, will bind the indorser, provided he had full knowledge of the laches when the promise was made." (*Ross* v. *Hurd*, 71 N. Y. 14, at p. 18.) (See, also, Neg. Inst. Law, §§ 131, 132, 134.)

How is the acceleration clause to be interpreted? What con-

struction is to be put upon the default of June twenty-seventh? Accelerated maturity plays the decisive part in this controversy. Before maturity there is neither obligation nor opportunity for presentment. Presentment waits on maturity — but precedes default. Where there is no duty there can be no default.

(1) Upon the June twenty-seventh default did the remaining notes become demand notes requiring presentment within a reasonable time? (*German Amer. Bank* v. *Mills*, 99 App. Div. 312.)

(2) Did such default *ipso facto* work an unqualified acceleration of maturity, making the default date the fixed or determinable due date for all the remaining notes and requiring them to be then and there promptly presented?

It is to be noted that the Negotiable Instruments Law (§§ 20 and 23) classes this type of a note as one payable at a determinable future time, unlike a note payable on demand.

" Therefore, the due acceleration of the due date by the bondholders only served to make the principal due at a date *before* that on which it would have come due except for the default in payment of interest by the obligor. Even with the due date thus accelerated, the bonds still remained payable ' at a fixed or determinable future time,' as defined by section 23 of the Negotiable Instruments Law." (*Higgins* v. *Hocking Valley R. Co.*, 188 App. Div. 684, at p. 696.)

(3) Did such default give the holders of the other respective notes the option to thereupon either elect to accelerate their respective fixed dates of maturity or to let them run the full period originally determined?

If the wording of the acceleration clause were to constitute the sole and binding criterion, the conclusion is inescapable that a default in one of the earlier notes *ipso facto* resulted in making the default date the fixed absolute due day of all of the outstanding notes.

But the law need not play slave to mere words. If she is to be the jealous mistress she must play the part. For thus the established purpose of the law and not merely the isolated common definition of the language can be sought and served.

This paper was conceived and circulated as a negotiable instrument. As such the statute expressly endowed it with certain distinctive properties which the court should not unnecessarily destroy.

It is in this light, guided by these principles, that the court would consider the present problem. At the outset one must admit that there are respectable rulings on both sides of the fence on this question, whether the default created an absolute or an optional accelerated maturity. A brief reference to some of the authorities speaks for itself:

" He, however, has made the mistake of considering a class of

making all notes due upon the non-payment of any one as giving an option, which he may or may not exercise. This is not so. The contract and chattel mortgage do not say that the remaining notes, upon default, shall immediately become payable at the *option* of the seller but shall be immediately payable. The plaintiff had no option upon default of the first note; all of the others were immediately due and it was a right of the defendant to have them due and payable at that time, as the Statute of Limitations would begin to run as against them as of that date of default." (*First Nat. Bank of Sturgis* v. *Peck*, 8 Kan. 860.)

" The notes and contemporaneous writings constituted but one contract for the payment of money; when the default was made in the payment of the first instalment the entire amount of the balance unpaid became due absolutely, and not at the option of the plaintiff." (*Banzer* v. *Richter*, 68 Misc. 192, at pp. 195, 197; affd., without opinion, 146 App. Div. 913.) (See, also, *Tiedeman Mtge. & Finance Co.* v. *Carlson*, 41 Ga. App. 406; *Blake* v. *Lawrence*, 4 Esp. 148.)

The practical result of this construction takes the option to accelerate the maturity from the holder (the creditor) and gives it to the maker (the debtor).

For should the maker elect to default — *ipso facto* the note matures.

Glancing at the other side of the question, we find in a case where the note read as follows: " This note is one of a series of twenty-five notes, of even date herewith, of the sum of five thousand dollars each, and shall become due and payable to the holder on the failure of the maker to pay the principal and interest of any one of the notes of said series," the United States Supreme Court ruled: "It is true that, upon failure of the maker to pay the principal and interest of any note of the whole series of twenty-five, the others would become due and payable; that is, due and payable at the option of the holder. But a contingency under which a note may become due earlier than the date fixed is not one that affects its negotiablity." (*Chicago Ry. Co.* v. *Merchants' Bank*, 136 U. S. 268, at p. 284.) See, also, *Wye* v. *Hatcher*, 135 Tenn. 609; *Moline Plow* v. *Webb*, 146 U. S. 616, at p. 625.)

To thoroughly rehearse the reasoning and review the rulings of the courts on this subject of uniform legislation tends to expose a disappointing judicial conflict, where one would prefer to find certainty and consistency.

In this case now before me the plaintiff depends for legal support upon the authority of *Berman-Steinberg, Inc.,* v. *Cotton Stores, Inc.* (146 Misc. 586), decided in the City Court; while the defendant counts for legal sanction upon the case of *Bloom* v. *Rainbow Laundry Stores, Inc.* (144 Misc. 545), also decided in the City Court.

Neither decision cites any controlling or conclusive precedent.

The light in which I have endeavored to view the problem relieves me of the influence of these precedents. Aside from that fact, " The rule of *stare decisis* is controlling when the court of last resort has laid down a principle of law applicable to a certain state of facts, or an intermediate court has made such a decision in harmony with established law or not at variance with conclusive authority." (*Montrose* v. *Baggott*, 161 App. Div. 494, at p. 501.)

The present day agitation for the inflation of currency, the common demand for a wider distribution of money and property, and the pressing economic necessity for increased purchasing power, are factors to which no court of justice can be indifferent. For these reasons alone the court should be anxious to lend its sanction and support to any helpful legitimate circulating medium.

The absence of an exactly identical precedent is no alibi.

" While no cases precisely in point have been discovered, it is clear that this result must follow if the instrument is to circulate freely." (Acceleration of Promissory Notes, by Zachariah Chaffee, Jr., 32 Harvard Law Rep. 769.)

Judgment for the plaintiff; ten days' stay of execution.