321 B.R. 614 (2003)
In re APPONLINE.COM, INC., Island Mortgage Network, Inc., et al., Debtors.
Broward Title Company, Appellant,
v.
Matrix Capital Bank and HSA Residential Mortgage Services of Texas, Inc., Appellees.
No. 03-CV-0370 JS MLO.
United States District Court, E.D. New York.
July 23, 2003.
*617 Ronald P. Gossett, Gossett & Gossett, P.A., Hollywood, FL, for Appellant.
Steven J. Cohen, Wachtel & Masyr, LLP, James L. Garrity, Jr., George J. Wade, Paul S. Hessler, New York City, for Appellees.

MEMORANDUM AND DECISION
SEYBERT, District Judge.
Pending before this Court is an appeal arising from a bankruptcy action filed in the United States Bankruptcy Court for the Eastern District of New York by Debtors AppOnline.com, Inc. ("AppOnline") and Island Mortgage Network, Inc. ("Island Mortgage") (collectively, "Debtors"). Appellant Broward Title Company ("Broward") appeals from the Order of the Honorable Dorothy Eisenberg, U.S.B.J., dated December 4, 2002, which held that Appellees Matrix Capital Bank ("Matrix") and HSA Residential Mortgage Services of Texas, Inc. ("RMST") were the holders in due course of the underlying notes and mortgages in question, thus defeating any equitable claims Broward may have had to the notes and mortgages. In addition, Broward is seeking a conditional award for attorney's fees.

BACKGROUND[1]

I. The Parties

Alan M. Jacobs is the Court appointed Chapter 11 Trustee of AppOnline and Island Mortgage. AppOnline was a holding company, that, through its subsidiaries, engaged in the mortgage and brokerage business. Island Mortgage is a whollyowned subsidiary of AppOnline.
Broward is a Florida title insurance company engaged in the business of issuing real estate title insurance policies, in connection with which Broward conducts *618 real estate closings and acts as a disbursing agent.
Matrix is a federally chartered bank organized under the laws of the United States, with a principal place of business located in Las Cruces, New Mexico. Prior to the filing of these cases, Matrix provided warehouse loans to Island Mortgage to finance the origination of certain mortgage loans. For the purposes of the original adversary proceeding, the parties stipulated that Matrix was a secured creditor of Island Mortgage and Matrix claimed a perfected security interest in the Amarante Note and Mortgage. The Amarante Note and Mortgage related to a loan closing conducted by Broward, at which Broward acted as disbursing agent. Matrix claims that it is entitled to the proceeds of the Amarante Loan as a holder in due course of the Amarante Loan and Mortgage.
RMST is a Delaware corporation that, similar to Matrix, provided warehouse loans to Island Mortgage to finance the origination of certain mortgage loans. For the purposes of the initial adversary proceeding, the parties stipulated that RMST was a secured creditor of Island Mortgage and RMST claimed a perfected security interest in the Ciceron Note and Mortgage. The Ciceron Note and Mortgage related to a loan closing conducted by Broward and at which Broward acted as disbursing agent. RMST claims that it is entitled to the proceeds of the Ciceron Loan as a holder in due course of the Ciceron Loan and Mortgage.
National Settlement Services Corp. ("National Settlement") is a Delaware corporation which is a wholly-owned subsidiary of Action Abstract, Inc. ("Action Abstract"). Action Abstract is a New York corporation and is wholly owned by Robert Knickman, a director of AppOnline.

II. Prior History

On June 19, 2000, AppOnline and Island Mortgage filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Prior to the commencement of the bankruptcy proceedings, Island Mortgage was a mortgage banker and broker that originated and sold mortgages. Island Mortgage originated the mortgage loans at issue in the present case. The loans at issue were made to Gilbert and Susan Amarante ("Amarante Loan") and Simaye Ciceron and Shirley Brown ("Ciceron Loan"). The Amarante Loan and the Ciceron Loan have since been sold by the trustee, Alan M. Jacobs, who was appointed by the bankruptcy court.

III. Facts

A. Amarante Loan

On or about January 12, 2000, Matrix entered into a Mortgage Purchase/Repurchase Agreement with Island Mortgage for the sale of residential mortgage loans to Matrix ("Matrix Purchase Agreement"). Matrix subsequently sold the Amarante Loan to Island Mortgage in accordance with the Matrix Purchase Agreement. On May 30, 2000, Matrix wired funds for the mortgage to Action Abstract, in accordance with Island Mortgage's instructions, prior to the scheduled closing of the Amarante Loan.
Broward expected the loan proceeds for the Amarante Mortgage to be wired to it on May 31, 2000. However, the closing was postponed to June 1, 2000, and as of the time of the rescheduled closing, Broward received a check from National Settlement in the sum of $115,117.61 representing the net proceeds of the loan, rather than a wire transfer. The Amarantes executed the mortgage and note in favor of Island Mortgage at the closing on June 1, 2000.
*619 Broward paid off the pre-existing mortgage and paid the sellers their net proceeds from the sale with the money from its escrow account. These checks were each dated May 31, 2000. By deposit slip dated June 2, 2000, Broward deposited a check from Island Mortgage into Broward's bank account. On June 6, 2000, the check from Island Mortgage, drawn on a National Settlement account, which represented the proceeds from the Amarante Loan, was dishonored due to a stop payment order issued against the check. A replacement check was sent to Broward on June 6, 2000, at its request, which was also dishonored.
Broward transmitted the original Amarante Note and related documents to Matrix. At all relevant times after the Amarante closing, Matrix remained in possession of the Amarante Note. The Chapter 11 Trustee sold the Amarante mortgage loan to Empire Mortgage IX.

B. Ciceron Loan

The facts surrounding this loan are substantially similar to those surrounding the Amarante Loan. RMST was a party to a Mortgages Purchase Agreement with Island Mortgage dated January 31, 2000 ("RMST Purchase Agreement"). On June 16, 2000, RMST and Island Mortgage contemplated the sale of the Simaye Ciceron and Shirley J. Brown ("Ciceron Loan") note, pursuant to the terms of the RMST Purchase Agreement. RMST wired $82,400 on June 19, 2000, to Action Abstract for the mortgage loan.
Broward acted as the closing agent in connection with the Ciceron Loan. On June 21, 2000, Broward received from Island Mortgage a check in the sum of $77,216.88, drawn from the account of David Duboff, P.C. (the "Duboff Check"). The Duboff Check represented the loan proceeds for the Ciceron Loan.
On June 22, 2000, the closing of the Ciceron Loan took place. Broward used the Duboff Check to allow it to disburse funds from its own escrow account to pay off the pre-existing mortgage and to pay the sellers their net proceeds from the sale. At all relevant times after the Ciceron closing, RMST was in possession of the Ciceron Note. Payment of the Duboff Check was stopped and no funds were ever received by Broward to reimburse it for the money it disbursed in connection with the Ciceron Mortgage.

C. Amarante Note and Ciceron Note

Both the Amarante Note and the Ciceron Note are identical except for the amount of the monthly principal and interest payments to be made by the borrowers. They provide, in relevant part:
In return for a loan ... Borrower promises to pay ... plus interest.... Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of nine percent (9.000%) per year until the full amount of the principal has been paid.... Borrower shall make payment of principal and interest to Lender on the first day of each month beginning on [specified date].... Payment shall be made at ... Melville, New York. . . . Each monthly payment of principal and interest will be in the amount of $663.01.[2] This amount will be part of a larger monthly payment required by the Security Instrument[3] [defined in P 3 as the mortgage], that shall be applied to *620 principal, interest and other items in the order described in the Security Instrument.... If Lender has not received the full monthly payment required by the Security Instrument ... by the end of fifteen calendar days after the payment is due, the Lender may collect a late charge in the amount of FOUR percent (4.0000%) of the overdue amount of each payment.

D. Amarante Mortgage and Ciceron Mortgage

Both the Amarante Mortgage and the Ciceron Mortgage include the following clause:
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and Note.

E. Bankruptcy Court Ruling

In an order, dated December 4, 2002, Judge Eisenberg determined that the mortgage notes were negotiable instruments and that Matrix and RMST were holders in due course, cutting off the equitable claims of Broward. Judge Eisenberg reasoned that the mortgage notes contained unconditional promises to pay a fixed sum that could be determined from the face of the notes. The Judge held that the notes were negotiable instruments as defined by N.Y. UCC § 3-104 and Appellees are the holders in due course of the notes, severing Appellant's equitable interest. Therefore, the Court dismissed Broward's claims and found that Matrix and RMST are entitled to the proceeds of the Amarante and Ciceron Loans, respectively, as holders in due course of the respective notes and mortgages.
Broward filed the instant appeal on January 22, 2003, seeking a reversal of Judge Eisenberg's December 4, 2002 decision that the mortgage notes in dispute are negotiable instruments, that Appellees are holders in due course of the notes and that Appellant's equitable claims are severed.

STANDARD OF APPELLATE REVIEW
Under Rule 8013 of the Federal Rules of Bankruptcy, "[o]n an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANK. P. 8013. The court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...." Id.; see also In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir.1994); In re PCH Assocs., 949 F.2d 585, 597 (2d Cir.1991). Here, there is no dispute as to the relevant facts. Therefore, the finding of facts are not clearly erroneous and will not be set aside. The bankruptcy court's legal conclusions are evaluated de novo. See In re Momentum Mfg. Corp., 25 F.3d at 1136.

DISCUSSION
Broward claims that it is entitled to the sale proceeds from both the Amarante Note and the Ciceron Note. Matrix and RMST have also asserted claims to the sale proceeds from the Amarante Note and the Ciceron Note, respectively. As the salient facts are sufficiently similar in both transactions, Matrix and RMST will be discussed together.

I. Choice of Law

The holder in due course doctrine arises from the Uniform Commercial Code ("UCC"). Therefore, it must be determined *621 which state's UCC governs the transactions at issue. Appellant admits that New York law applies to determine the validity and enforcement of the mortgage notes, but claims that the validity of a mortgage of real estate is controlled by the laws of the state in which the property is located, in this case, Florida. In addition, Appellant asserts that the creation of a security interest in the notes is governed by the law of the state where the mortgage notes are located, which is Texas in the case of RMST and New Mexico in the case of Matrix.
The general rule is that the laws of the state where a note is executed and payable govern the interpretation of that note. See United States v. Guaranty Trust Co., 293 U.S. 340, 346-47, 55 S.Ct. 221, 79 L.Ed. 415 (1934); United States v. Pearson, No. 60 CV 690, 1967 U.S. Dist. LEXIS 10762, at *21 (S.D.N.Y. May 18, 1967). When a note is executed in one state and payable in another, it is governed as to its nature, validity, interpretation and effect by the laws of the state where it is made payable. Id. (citing Beadall v. Moore, 199 A.D. 531, 533-34, 191 N.Y.S. 826 (1st Dep't 1922)); see also Farmers' Trust Co. v. Bradshaw, 137 Misc. 203, 205, 242 N.Y.S. 598 (N.Y.City Ct.1930). Therefore, since both of the mortgage notes in question are payable in New York, the New York State UCC applies.

II. Holder in Due Course Analysis

RMST and Matrix have the burden of proving that they are the holders in due course of the notes in question. See Kastor v. Schwartzer, 41 N.Y.S.2d 119, 119 (1st Dep't 1943); Karpas v. Bandler, 218 A.D. 418, 420, 218 N.Y.S. 500 (1st Dep't 1926).
Under the UCC, a holder in due course "takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt...." N.Y. UCC § 3-305 (McKinney 2001). Therefore, if it were determined that RMST and Matrix were holders in due course of the Ciceron Note and the Amarante Note, respectively, then Broward's equitable claims to the sale proceeds from both of the notes would be defeated.
A holder in due course is "a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." N.Y. UCC § 3-302(2)(McKinney 2001); see also A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A., 41 F.3d 830, 835 (2d Cir.1994).
In order for an instrument to be negotiable, it must: "(a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by [N.Y. UCC Article 3]; and (c) be payable on demand or at a definite time; and (d) be payable to [the payee's] order or to [the instrument's] bearer." N.Y. UCC § 3-104(1)(McKinney 2001); see also A.I. Trade Fin., 41 F.3d at 835. RMST and Matrix must each establish all of these requirements in order to qualify as holders in due course and be entitled to the sale proceeds from the Amarante and Ciceron Notes.

B. Negotiability

Broward admits that the notes in question meet the requirements under sections (a), (c) and (d) to determine whether an instrument is negotiable. However, they assert that the notes fail under section (b) because they do not contain an *622 unconditional promise or order to pay a sum certain in money and no other promise. A promise or order is not unconditional under N.Y. UCC § 3-105(2)(a) if the instrument states that it is subject to or governed by any other agreement. The Official Commentary to N.Y. UCC § 3-105 states:
8. Paragraph (a) of subsection (2) retains the generally accepted rule that where an instrument contains such language as "subject to terms of contract between maker and payee of this date," its payment is conditioned according to the terms of the agreement and the instrument is not negotiable. The distinction is between a mere recital of the existence of the separate agreement or a reference to it for information, which under paragraph (c) of subsection (1) will not affect negotiability, and any language which, fairly construed, requires the holder to look to the other agreement for the terms of payment. The intent of the provision is that an instrument is not negotiable unless the holder can ascertain all of its essential terms from its face. In the specific instance of rights as to prepayment or acceleration, however, there may be a reference to a separate agreement without destroying negotiability [As amended 1962].
Broward must demonstrate that the notes in question are subject to or governed by another agreement in order to establish that the promise was not unconditional.
In New York, there is no per se rule to determine whether or not an instrument is negotiable. Instead, each instrument is analyzed on a case-by-case basis according to the UCC requirements stated above. See, e.g., Enoch v. Brandon, 249 N.Y. 263, 267, 164 N.E. 45, 47 (1928); First Nat'l City Bank v. Valentine, 62 Misc.2d 719, 720, 309 N.Y.S.2d 563, 564 (Nassau County Ct.1970).
Since section (b) of the requirements of negotiability is the only requirement in dispute, this Court must determine whether the notes contain unconditional promises to pay a sum certain that can be ascertained from the face of the notes. As stated in the Official Commentary to UCC § 3-105, if the language of the notes, fairly construed, requires one to look outside the notes to determine the terms of repayment, then the promise is not unconditional and the note is not negotiable. The Court finds that the Amarante Note and the Ciceron Note are negotiable instruments under UCC § 3-104.

1. Unconditional Promise to Pay

Both the Amarante Note and the Ciceron Note contain unconditional promises to pay. Appellant argues that the promises in each of these notes are not unconditional because they are governed by another agreement, namely the mortgage. However, neither note contains any language that the notes are "subject to" or "governed by" the mortgages, as required to eradicate negotiability under UCC § 3-105. Nor can it be said that the language in the notes, fairly construed, requires one to look at the mortgages in order to determine the terms of repayment.
Appellant relies on a provision in the notes stating that amounts to be paid under the notes "shall be applied to principal, interest and other items in the order described in the Security Instrument." However, as stated in the Official Commentary to UCC § 3-105, mere recitals of the existence of the separate agreement or references to it for information, such as this provision, do not affect negotiability. In general, the existence of "a separate agreement does not affect the negotiability of an instrument." N.Y. UCC § 3-119 *623 (McKinney 2001). Official Comment 1 to UCC § 3-119 states that the separate agreement referred to in this section is "most commonly an agreement creating or providing for a security interest such as a mortgage, chattel mortgage, conditional sale or pledge." Although both notes do provide for a security interest in the mortgages, and references same, their negotiability is not destroyed by the existence and mere reference to the Security Instrument.
Such a determination is supported by the governing case law. In Enoch, the Court of Appeals held certain notes to be negotiable notwithstanding their references to a related mortgage because it was clear that the relevant provisions did not affect the unconditional nature of the promise, but merely functioned as security for the borrowers and lenders. Enoch, 249 N.Y. at 269, 164 N.E. 45. The Court similarly concluded in Valentine that mere references to the mortgage did not destroy the negotiability of the note and that its only purpose was to provide the holder with additional security. Valentine, 62 Misc.2d at 720, 309 N.Y.S.2d 563. Here, the references to the mortgages in the Amarante and Ciceron Notes do not affect the unconditional nature of the promises or the terms of repayment; their sole purpose is to provide the lenders with additional security.
In addition, the terms of repayment can be determined from the face of the notes. With respect to the Amarante Note, there is an unconditional promise to pay $119,900, at a fixed interest rate, over a 30-year period, in monthly installments of $964.75, and no other promises except as authorized under the UCC. With respect to the Ciceron Note, there is an unconditional promise to pay $82,400, at a fixed interest rate, over a 30-year period, in monthly installments of $663.01, and no other promises except as authorized. Clearly, one does not have to look at the respective mortgages in order to determine the terms of repayment. Therefore, the promises to pay in the Amarante and Ciceron Notes are unconditional.

2. Sum Certain

Both of the notes also contain a "sum certain" to be paid. As stated above, the Amarante and Ciceron Notes reflect the promise to pay $119,900 and $82,400, respectively, plus nine percent interest, over a 30-year period, in monthly installments of $964.75 and $663.01, respectively. Under the UCC § 3-106(1)(a), "the sum payable is a sum certain even though it is to be paid (a) with a stated rate of interest or by stated installments...." N.Y. UCC § 3-106(1)(a)(McKinney 2001). As such, the fact that the notes in question are subject to a fixed interest rate does not render the amounts to be paid uncertain.
Appellant claims that neither note contains a sum certain because they each refer to a larger monthly payment required by the Security Instrument. However, these larger monthly payments do not alter the certainty of the amounts due under each of the notes. The additional amounts only provide additional security to the mortgage holders with respect to taxes and insurance. The amounts due under each of the notes are not affected by this provision.
Additionally, Appellant argues that the notes do not provide for the payment of a sum certain because the date of disbursement of the loan proceeds cannot be ascertained. Once again, this does not render the notes non-negotiable because the amount payable under the notes can be calculated within the four corners of the notes, regardless of the date of disbursement. As stated above, the total amount, the interest rate and the monthly payments are all provided in the notes.
*624 Finally, Appellant claims that the notes do not contain a sum certain because the amount of late charges cannot be determined. Each note states: "[i]f Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(c) of this Note, ... Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment." (emphasis added). Since the amount that is late to the Lender, which would include the principal amount and the interest due for that period, can be calculated from the notes, the amount due under the notes remains certain. The fact that other monies may be overdue is of no consequence to the payments required by the notes.
Therefore, since it is clear from the face of the notes that they both contain an unconditional promise to pay a sum certain and no other promise, the Amarante Note and the Ciceron Note are negotiable instruments.

B. Holders in Due Course

The Court must determine whether Matrix and RMST are holders in due course of the notes. The Court finds that Matrix and RMST are both holders in due course of the notes. As stated above, a party is a holder in due course when: (1) it was in possession of the notes in question; (2) it acquired the notes for value; (3) in good faith; and (4) without notice of fraud or any adverse claims to the notes. N.Y. UCC § 3-302(1)(McKinney). It is not disputed that Matrix and RMST were in possession of the notes at all relevant times.
Under the UCC, a holder takes an instrument for value: "(a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or (b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due...." N.Y. UCC § 3-303 (McKinney 2001); see also European Asian Bank A.G. v. G. Crohn & Co., 769 F.2d 93, 96 (2d Cir.1985); Swiss Credit Bank v. Chemical Bank, 422 F.Supp. 1305, 1310-11 (S.D.N.Y. 1976). Since the parties have stipulated that RMST and Matrix are to be treated as though they possess perfected security interests in and to the notes, they have met the value requirement.
RMST and Matrix must further prove that they acquired the notes in good faith. Under UCC § 3-302, "good faith" requires honesty, not the exercise of due care. Bank of N.Y. v. Welz, 118 Misc.2d 645, 648, 460 N.Y.S.2d 867 (Sup. Ct.N.Y. County 1983). Good faith depends on what the holder actually knew about the transaction in question. Regent Corp., U.S.A. v. Azmat Bangladesh, Ltd., 253 A.D.2d 134, 686 N.Y.S.2d 24, 29 (1st Dep't 1999). In addition, constructive knowledge is insufficient to demonstrate a lack of good faith. Id.; see also Chem. Bank of Rochester v. Haskell, 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339 (1980). There is no evidence that Matrix or RMST did not act honestly in pursuing and completing the transaction to purchase the notes. Furthermore, there is no evidence that either company knew about any illegal practices conducted by Island Mortgage or AppOnline. Therefore, Matrix and RMST also satisfy the good faith requirement.
Finally, Matrix and RMST must demonstrate that neither party had notice of a claim or defense to the notes. Under the UCC, to constitute notice of a claim or defense: "the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith." N.Y. UCC § 3-304(7)(McKinney 2001). Under New York law, a party has *625 notice of a claim or defense if it has " `actual, subjective knowledge of the defense.'" Fortunoff v. Triad Land Assocs., 906 F.Supp. 107, 113 (E.D.N.Y.1995)(quoting Indyk v. Habib Bank, Ltd., 694 F.2d 54, 56 (2d Cir.1982) (citations omitted)). The existence of "mere suspicious circumstances does not constitute notice." Id. (internal citations omitted). Again, there is no evidence that either Matrix or RMST had any actual knowledge or notice of Broward's claims and defenses to the Amarante and Ciceron Notes and Mortgages, respectively. Consequently, the final prong of the holder in due course analysis is satisfied as well.
Both Matrix and RMST had possession of the notes in question at all relevant times, took the notes for value, in good faith, and without notice of Broward's claims. Therefore, Matrix and RMST are holders in due course of the Amarante Note and the Ciceron Note, respectively.
Where, as here, a promissory note secured by a mortgage is assigned or purchased for value, the assignee "takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee." Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 273, 21 L.Ed. 313 (1872); see also Gramatan v. D'Amico, 50 Misc.2d 233, 234, 269 N.Y.S.2d 871 (Suffolk County Ct.1966)(holder in due course of negotiable promissory note that is secured by a mortgage, "has taken the mortgage itself free of all defenses and claims not available against the note itself"); Weaver Hardware Co. v. Solomovitz, 98 Misc. 413, 163 N.Y.S. 121, 130-31 (Sup.Ct. N.Y. County 1917)("The bona fide purchaser before maturity of a promissory note secured by a mortgage takes the mortgage as he takes the note free from any equities which existed in favor of third parties while it was held by the mortgagee.") Since Matrix and RMST are holders in due course of the Amarante and Ciceron Notes, respectively, they are also the holders in due course of the Amarante and Ciceron Mortgages, respectively.
As holders in due course, Matrix and RMST hold the Amarante Note and Mortgage and the Ciceron Note and Mortgage, respectively, free of any claims or defenses against them by Broward and free of any claims of a property or possessory right to the notes by Broward. N.Y. UCC §§ 3-305 and 3-306.

C. Applicability of N.Y. UCC Article 9

Appellant argues that Article 9 of the UCC should govern these transactions and, therefore, Broward's equitable claims should not be cut off by the holders in due course. Appellant claims that, under Article 9, assignees such as Matrix and RMST are subject to all terms of the contract as well as any claim or defense that arises from that contract. Article 9 of the UCC applies when a mortgagee pledges a note or mortgage to secure his own obligation to another party. In re Churchill Mortgage Inv. Corp., 233 B.R. 61, 70 (Bankr.S.D.N.Y.1999)(citing UCC § 9-102(2)). The Amarante Note and Mortgage and the Ciceron Note and Mortgage were assigned to Matrix and RMST, respectively, as part of a purchase agreement, not to secure any obligation on the part of Matrix or RMST. The notes were secured by mortgages and are therefore subject to Article 3 of the UCC's holder in due course analysis. See Valentine, 62 Misc.2d at 720, 309 N.Y.S.2d 563. Therefore, Article 9 does not apply to these transactions and Matrix and RMST are the holders in due course of the notes and mortgages in question.

III. Attorney's Fees

Appellant has also made a motion for a conditional award of attorney's fees. Of *626 course, only the prevailing party may receive an award for attorney's fees. Since Appellant's equitable claims to the mortgage notes were dismissed, the motion for attorney's fees is DENIED.

CONCLUSION
For all the reasons set forth herein, the Order of the Bankruptcy Court is AFIRMED, in its entirety, and Broward's appeal is DISMISSED. Broward's motion for conditional award of attorney's fees is DENIED.

ORDER
Pending before this Court is a motion for rehearing, pursuant to Rule 8015 of the Federal Rules of Bankruptcy Procedure. The Appellant, Broward Title Company ("Broward" or "Appellant") requests that this Court withdraw the Memorandum and Decision, dated July 23, 2003, and enter a new Memorandum and Decision which is consistent with the Appellant's arguments. As discussed below, this Court is not persuaded by Appellant's arguments and, therefore, does not withdraw the previously issued Memorandum and Decision.

PROCEDURAL HISTORY
By Memorandum and Decision, dated July 23, 2003 ("July Order"), this Court has previously decided an appeal arising from a bankruptcy action filed in the United States Bankruptcy Court for the Eastern District of New York. Appellant brought this Court an appeal from the Order of the Honorable Dorothy Eisenberg, U.S.B.J., dated December 4, 2002. Judge Eisenberg's order held that Appellees Matrix Capital Bank ("Matrix") and HSA Residential Mortgage Services of Texas, Inc. ("HSA") were the holders in due course of the underlying notes and mortgages in question and thus there could be no equitable claims. Broward also sought a conditional award for attorney's fees. This Court's July Order determined that Judge Eisenberg had properly decided the matter. In addition, Broward's request for attorney's fees was moot.

BACKGROUND
The parties are very familiar with the facts in the instant case. Reference is made to both the July Order of this Court as well as the Bankruptcy Court's Memorandum Decision and Order, dated December 4, 2002. See In re AppOnline.com, Inc., 285 B.R. 805 (Bankr.E.D.N.Y.2002).

STANDARD OF APPELLATE REVIEW
Under Rule 8015 of the Federal Rules of Bankruptcy, a rehearing is requested so that the District Court can review its previous decision. See New York News Inc. v. Newspaper and Mail Deliverers' Union of New York, 139 F.R.D. 294, 294-95 (S.D.N.Y.1991). While the standard for granting a motion under Rule 8015 is not set forth in the rule itself, the notes direct attention to Rule 40 of the Federal Rules of Appellate Procedure. See In re Wingspread Corp. v. Paramount Communications, 186 B.R. 803, 807 (S.D.N.Y. 1995). Rule 40 provides that the appellant must "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support if the petition." See FED. R.APP. P. 40(a)(2).

DISCUSSION
Based on the Appellant's submission, this Court does not believe that a rehearing is appropriate in this case. Broward argues that a rehearing is appropriate in the instant case because Article 9 should apply to the transaction and that this Court misapprehended the terms of the repayment notes. HSA and Matrix *627 assert that Broward's motion for a rehearing is inappropriate in that Broward has not presented the Court with anything other than what had previously been presented. Although the Court agrees that Broward should be procedurally precluded from bringing this motion for rehearing in the first instance, this Court will address the alleged facts and law which this Court did not consider.
Broward should be precluded from bringing the instant motion for rehearing because they have done nothing more than recast the same positions which were previously submitted, considered and addressed by this Court. Broward again argues to this Court that Article 9 of the Uniform Commercial Code ("UCC") applies to the subject transactions. This exact argument was previously briefed by Broward in their appellate brief and therefore is not appropriate for consideration on a motion for rehearing.
However, assuming for the limited purpose of this discussion that it could be argued again, Broward's position that Article 9 applies does not lead this Court to finding in favor of Broward. Assuming principles of equity were applicable under Article 9, Broward would be precluded from recovery because as between two injured parties, the party who made the loss possible is legally responsible. See, e.g., Int'l Forum ofFla. Health Benefit Trust v. South Broward Hosp. Dist, 607 So.2d 432, 437 (Fla.Dist.Ct.App.1992); Friedland v. City of Hollywood, 130 So.2d 306 (Fla.Dist.Ct.App.1961).
There is no doubt that Island Mortgage committed a fraud against the parties arguing in the instant motion. Importantly, however, Broward was the party who knew that the checks being issued at the time of closing were being returned for insufficient funds. Broward failed to comply with a Florida Statute, FLA. STAT. § 626.8473(3), regarding the deposit of funds by a title insurance agent and a Florida Regulation, FLA. ADMIN. CODE § 4-186.008, prohibiting the distribution of uncollected funds. Broward acted negligently by choosing to fund the closings out of its own funds rather than wait for the funds from Island Mortgage to be available. See Wade v. Lake County Title Co., 6 Cal.App.3d 824, 86 Cal.Rptr. 182, 184 (Cal.Ct.App.1970). Moreover, the length of time during which checks were being returned for insufficient funds and the amount of money involved in these returned checks should have alerted Broward to the seriousness of the situation. HSA, however, had no actual or constructive notice as to the issues with Island Mortgage. Equity dictates that Broward rather then HSA or Matrix be held accountable.
Broward is also procedurally precluded from again arguing that the notes require the Court to look outside the four corners to determine the amount of the last paymentwhich would be paid nearly 30 years from the loan's inception. This argument was specifically made by Appellant in their initial brief and, in fact, mentioned by the Court in the July Order. This Court again finds that Appellant's argument regarding the date of disbursement does not change the notes to something other than a sum certain amount.
The date of disbursement could potentially affect the last payment due under the terms of the note. Broward is in affect arguing that after the payment of approximately three times the loan amount, the last payment may have to be slightly adjusted upward or downward to completely close out the loan which renders the loan not for sum certain. This argument is not strong and fails for several reasons. First, and most important, this language is commonly included in loans so that any mathematical nuances that are carried throughout the amortization *628 can be, if necessary, adjusted in the last payment. If this language made instruments not for a sum certain than almost every document, drafted by capable attorneys, would not be for a sum certain. Moreover, this language allows a bank to collect any late fees and other miscellaneous charges that may have accrued on the account over the term of the loan. Lastly, this language allows the bank to keep the loan unsatisfied until they are paid any outstanding amounts due to them and allows the loan to be kept open until the outstanding amounts are paid.

CONCLUSION
For all the reasons set forth herein, the Appellant's motion for rehearing is DNIED. This Court finds that even assuming that Appellant is not procedurally precluded from bringing the instant motion, the grounds upon which the Appellant asserts would not lead this Court to finding for Appellant. As this Court's July Order is not changed by the instant Order, the decision of the Bankruptcy Court remains AFFIRMED.
SO ORDERED.
NOTES
[1] These facts are taken from the Bankruptcy Court's Memorandum Decision and Order dated December 4, 2002.In re AppOnline.com, Inc., 285 B.R. 805 (Bankr.E.D.N.Y. 2002). The facts are neither in dispute nor clearly erroneous.
[2] This amount is for the Ciceron Note. The amount for the Amarante Note is $964.75.
[3] The "larger monthly payment required by the Security Instrument" in the Amarante Loan is $1,279.41; in the Ciceron Loan it is $935.39.