■ BENJAMIN KERSNER et al., Respondents, v FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROCHESTER, Appellant, et al., Defendant. [695 NYS2d 369] —In an action to recover damages for conversion, etc., the defendant First Federal Savings

and Loan Association of Rochester appeals from an order of the Supreme Court, Richmond County (Sangiorgio, J.), dated June 19, 1998, which granted the plaintiffs' motion for summary judgment on the complaint and to dismiss its affirmative defenses and counterclaim, and denied its cross motion for summary judgment dismissing the complaint and for summary judgment on the counterclaim.

Ordered that the order is affirmed, with costs.

The plaintiffs, Benjamin Kersner and Florence Kersner, had a home equity line of credit account with the defendant First Federal Savings and Loan Association of Rochester (hereinafter First Federal), which was secured by a mortgage on their Staten Island residence. In 1995 the plaintiffs' son, an attorney in Washington, D.C., introduced them to the defendant Michael Clott, who told the plaintiffs that he could help them obtain a new credit line with First Federal at a lower interest rate. Clott advised the plaintiffs that in order to obtain the new credit line, they would have to close out their existing account by writing him a check for the entire $200,000 limit of the account. After verifying from his son that Clott was a mortgage broker, Benjamin Kersner agreed to send Clott a check. However, in an effort to ensure that the check was not cashed by anyone and was used to close out the existing account, Kersner made the check payable to himself, did not indorse it, and wrote on the face of the check, "PAY OFF LOAN IN FULL—07506900130".

Clott, who was in fact a convicted felon whose mortgage broker license had been revoked by the State of Maryland, forged Kersner's indorsement, indorsed the check over to a corporation of which he was the principal, and deposited it in the corporation's account. First Federal, as the drawee bank, paid the amount of the check to the depository bank. After discovering the fraud, the plaintiffs commenced this action, seeking, as against First Federal, damages in the amount of $200,000 for conversion and unauthorized payment on the check. First Federal interposed several affirmative defenses, including defenses founded upon UCC 3-405 (1) (b), 3-406, and counterclaimed for foreclosure of the mortgage securing the line of credit account. The plaintiffs moved for summary judgment, and First Federal cross-moved for summary judgment dismissing the complaint. The Supreme Court, *inter alia*, granted the plaintiffs' motion for summary judgment, and we affirm.

As a general rule, a drawee bank may not debit its customer's account when it pays a check over a forged indorsement because "the underlying relationship between a bank and its

depositor is the contractual one of debtor and creditor * * * implicit in which is the understanding that the bank will pay out its customer's funds only in accordance with the latter's instructions" (*Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank,* 57 NY2d 439, 444). UCC 3-405 (1) (b)—the "fictitious payee" rule, creates an exception to the general principle that a drawer is not liable on a forged indorsement "in situations where the drawer is the party best able to prevent the loss" (*Getty Petroleum Corp. v American Express Travel Related Servs. Co.,* 90 NY2d 322, 327). This section provides that "[a]n indorsement by any person in the name of a named payee is effective if * * * a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument". Thus, under UCC 3-405 (1) (b), the forged indorsement "is treated as if it were the actual indorsement of the stated payee, and the payment by a transferee in the transactional chain is proper" (*Getty Petroleum Corp. v American Express Travel Related Servs. Co., supra,* at 327).

Under the circumstances of this case, we find no merit to First Federal's claim that Kersner's action in making the subject check payable to himself brings this transaction within the intended scope of the fictitious payee rule. In contrast to cases such as *Getty Petroleum Corp. v American Express Travel Related Servs. Co. (supra),* where the drawer clearly did not intend the named payee to have any interest in the subject check, here Kersner, as the maker and the payee, intended to retain an interest in the check. Although Kersner testified at his examination before trial that he did not intend to receive $200,000 cash by making the check payable to himself, he expected the check to be used as a vehicle for closing the higher interest rate line of credit account and opening a new line of credit with a lower interest rate. That Kersner intended to retain an interest in the check is also evidenced by the notation which he wrote on the face of the check. We further note that the vast majority of cases in which the fictitious payee rule has been held applicable involve faithless employees who devise forgery schemes to convert funds from their employers, and that in such instances, the employer is usually in the best position to prevent such losses through the exercise of reasonable care in the selection and supervision of employees (*see,* Clark, Law of Bank Deposits, Collections, and Credit Cards § 12.07 [3] [a], at 12-195 [rev ed 1999]; *Getty Petroleum Corp. v American Express Travel Related Servs. Co., supra*; *Prudential-Bache Sec. v Citibank,* 73 NY2d 263, 270). Here, however, the plaintiffs were not in a better position than First Federal to prevent the loss.

We also reject First Federal's contention that the plaintiffs should be precluded from recovery pursuant to UCC 3-406, which provides that "[a]ny person who by his negligence substantially contributes to * * * the making of an unauthorized signature is precluded from asserting * * * the lack of authority against a * * * drawee * * * who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's * * * business". To prevail under this provision, "a drawee must show that it acted in good faith in accordance with reasonable commercial standards and that the plaintiff's negligence substantially contributed to the forgery" (*Mouradian v Astoria Fed. Sav. & Loan,* 91 NY2d 124, 131). Contrary to the claim of First Federal, the record does not establish that it acted in good faith and in accordance with reasonable commercial standards in paying out the subject check. Notably, the record indicates that while it was First Federal's policy to verify that checks in the amount of $10,000 and above drawn on ordinary checking accounts were properly indorsed, it did not verify whether checks drawn on credit line accounts were properly indorsed. Moreover, since the payee of the check was also its maker, here the drawee bank was in a better than usual position to detect a forgery since it had the benefit of Kersner's signature on file with which to compare the indorsement. Considering these circumstances, we find that First Federal has failed to establish that it acted reasonably and with due care (*see, Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,* 74 NY2d 340; *see also, Lund v Chemical Bank,* 797 F Supp 259, 269), and, accordingly, that UCC 3-406 does not preclude the plaintiffs from asserting that the subject check was fraudulently indorsed.

Furthermore, we find that the Supreme Court properly dismissed First Federal's counterclaim for foreclosure, which is predicated upon the plaintiffs' failure to repay the $200,000 which the bank debited from their line of credit account when it paid out on the fraudulently-indorsed check. We note that pursuant to the order of the Supreme Court, First Federal has been, in effect, directed to pay the plaintiffs the principal sum of $200,000. Since payment of these funds would be the equivalent of a loan to the plaintiffs, they remain obligated to repay these funds to First Federal in accordance with the terms governing credit line accounts. In the event that the plaintiffs default on their obligation to repay this money, the remedy of foreclosure will still be available to First Federal. O'Brien, J. P., Krausman, Florio and H. Miller, JJ., concur.