OPINION OF THE COURT
C. Stephen Hackeling, J.
*476 By complaint dated September 4, 2003, plaintiff Bayshore Check Cashing Corp. brings the above|-captioned action to recover upon the dishonored $622 check drawn upon the account of defendant Landscapes by North East Construction Corp., doing business as Coastal Designs. This is, a small claims proceeding. The defendant has interposed an oral denial and asserted the defenses of “theft of checks,” “forgery/unauthorized signature,” and timely notice of the theft to its banking institution.
The Facts
The undisputed relevant facts in thib proceeding are as follows:
(1) On or about August 8, 2003, several checks were stolen from the defendant. !
(2) One of the checks was negotiated to the plaintiff, a commercial check cashing establishment, by a customer with whom plaintiff had prior dealings. ¡
(3) The subject check was drawn to the order of plaintiffs customer and appeared regular in its making with the exception that it was dated for presentment in Ajugust 2004, was signed by an illegible signatory which was not an authorized corporate signatory, and bore no corporate office indicia.
(4) The record presented is unclear as to the consideration paid by plaintiff in the course of acquiring possession of the defendant’s check.
(5) Defendant promptly notified its banking institution and the police of the check theft, resulting in said bank’s refusal to honor plaintiffs bank’s presentment for payment.
(6) Plaintiff acknowledged it took no steps to verify the authenticity of the subject check other than knowing its negotiator.
The Issues Presented
The dispositive issue presented for consideration by the court is whether plaintiff is a “holder in due course” of a negotiable instrument and, if so, whether defendant’s defenses of “forgery and unauthorized signature” are precluded.
The Law |
The plaintiff does not dispute defendant’s claims of theft of checks and forgery. Instead, plaintiff relies upon the precedent asserted in CLB Check Cashing v Mount Sinai Hosp. (Civ Ct, *477 NY County, Dec. 29, 2000, Index No. SCQ 61159-00 [unreported]), which cites to Regent Corp., U.S.A. v Azmat Bangladesh (253 AD2d 134 [1st Dept 1999]). The CLB Check Cashing precedent stands for the proposition that a commercial check cashing establishment, which takes a negotiable instrument in good faith, after taking steps to ascertain the validity of the instrument, may recover upon it from an innocent drawer even if stolen and forged. The theory being that such a claimant is a UCC 3-301 “holder in due course” (hereafter HDC) as long as it did not have actual notice of the theft or that payment had been stopped. As between two innocent victims, plaintiff argues that the law places the loss at the feet of the negligent check owner.
Sections 3-301 and 3-302 of the Uniform Commercial Code provide as follows:
“§ 3-301. Rights of a Holder
“The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name.”
“§ 3-302. Holder in Due Course
“(1) A holder in due course is a holder who takes the instrument
“(a) for value; and
“(b) in good faith; and
“(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
“(2) A payee may be a holder in due course.”
This court accepts plaintiffs position that the New York law defines HDC “good faith” as an absence of “actual knowledge” of defect and requires only “honesty” and not the exercise of “due care.” (In re AppOnline.com, Inc., 285 BR 805 [Bankr Ct, ED NY 2002], 290 BR 1 [Bankr Ct, ED NY 2003]; see also generally Indyk v Habib, 694 F2d 54 [2d Cir 1982].) However, a forged or unauthorized instrument does not by itself create liability for the unknowing innocent drawer as a forged signature is wholly inoperative even as against a holder in due course. (See Century Fed. Sav. & Loan Assn. of Long Is. v Roudebush, 618 F2d 969 [2d Cir 1980]; see also generally, Spielman v Manufacturers Hanover Trust Co., 60 NY2d 221 [1983]; Merrill Lynch v Chemical Bank, 57 NY2d 439 [1982].) The Uniform *478 Commercial Code has an express provision dealing with “unauthorized signatures” which provides:
“§ 3-404. Unauthorized Signatures
“(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.” (UCC 3-404.)
UCC 1-201 (43) defines “unauthorized signature” as one made without actual, implied or apparent authority and includes a forgery.
The preclusion from denial exception to the general rule requires a review of UCC 3-406 which provides:
“§ 3-406. Negligence Contributing to [Alteration or Unauthorized Signature
“Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due 'course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee’s or payor’s business.”
The section 3-406 “negligence” exception to the unauthorized signature defense creates two categories of “preclusion.” The first is for a “holder in due course.” The ¡second is for a “payor” who negotiates an instrument in good faith and “in accordance with the reasonable commercial standards of the drawee’s or payor’s business.” In either situation, ajn innocent, unknowing but negligent drawer is precluded from interposing the “unauthorized signature” defense. ,
Is Plaintiff a Holder in Due Course?
Before moving to a discussion of defendant’s alleged negligence, the court must first review plaintiff’s “safe harbor” status as either a HDC or a commercially reasonable business payor. A holder in due course is a statutory doctrine which governs negotiable instruments. All documents must be individually assessed to see if they fit the description of a negotiable instrument. (See Enoch v Brandon, 249 NY 263 [1928].) Contrary to plaintiff’s assertion, the recipient of a postdated commercial check, even if for value, in good faith and without *479 actual knowledge of defect, is not sufficient by itself to constitute the “holder in due course” status. Such status is only conferred upon “holders of an instrument.” (See, A.I. Trade Fin. Inc. v Laminaciones de Lesaca, S.A., 41 F3d 830 [2d Cir 1994]; In re Joe Sipala & Son Nursery, 214 BR 281 [Bankr Ct, ED NY 1997].) Instruments are defined under the UCC as follows:
“§ 3-104. Form of Negotiable Instruments; ‘Draft’; ‘Check’; ‘Certificate of Deposit’; ‘Note’
“(1) Any writing to be a negotiable instrument within this Article must
“(a) be signed by the maker or drawer; and
“(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and
“(c) be payable on demand or at a definite time-, and
“(d) be payable to order or to bearer.
“(2) A writing which complies with the requirements of this section is
“(a) a ‘draft’ (‘bill of exchange’) if it is an order;
“(b) a ‘check’ if it is a draft drawn on a bank and payable on demand-,
“(c) a ‘certificate of deposit’ if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;
“(d) a ‘note’ if it is a promise other than a certificate of deposit.” (UCC 3-104 [emphasis added].)
In the case at bar the writing introduced into evidence as exhibit No. 1 is certainly not a draft, bill of exchange, note or certificate of deposit. Plaintiff identifies its exhibit No. 1 as a “check.” This document does not enjoy such a status as a check is “payable upon demand.” This document is dated August 8, 2004, and under the law is not considered a negotiable instrument until said date. Its holder is not a holder in due course until after said date, which is still eight months away. (See Financial Assoc. v Impact Mktg., 90 Misc 2d 545 [Civ Ct, NY County 1977] [finding that the UCC 3-304 (4) “post dated instrument exception” does not impose liability upon a corporate drawer for unauthorized check which has no corporate officer authorization].) Such a check is so irregular as to give the purchaser “notice of defense” pursuant to UCC 3-304.
Without HDC status, plaintiff must establish that it is a “good faith” payor “in accordance with the reasonable commercial *480 standards of the . . . payor’s business.” (UCC 3-406.) Plaintiff bears the burden of proving this. The record reveals that the only commercial reasonableness standard established by plaintiff was that it had prior dealings with the check thief and forger. It is admitted there was no effort to verify the authenticity of the draft, as well as the fact that plaintiffs agents did not pick up the patent defect of the check being accidentally postdated for over a year and that the check bore no corporate office for the signatory. Such a circumstance has already been determined by the appellate courts not to meet the “commercially reasonable business standard.” (See, Kersner v First Fed. Sav. & Loan Assn., 264 AD2d 711 [2d Dept 1999], citing Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co., 74 NY2d 340 [1989].) Having failed to establish a safe harbor exception under UCC 3-406, defendant is not precluded and may interpose the “unauthorized signature” defense established in section 3-404.* There exists no controversy over this fact. As a necessary result, plaintiffs complaint must be dismissed pursuant to UCC 3-404 as the purported negotiable instrument was not authorized.

 By way of dicta, the court finds that even if it was necessary to address the issue of defendant’s negligence concerning ihe safeguarding of its bank checks, the facts in this case are distinguishable from the facts of Carmine Rest. v Citibank (300 AD2d 149 [1st Dept 2002])., It is also noted that the failure to safeguard blank checks does not create drawer liability in the face of payor contributory negligence in the form of failure to undertake some effort to verify authorization.